694 P.2d 1371

**Geronimo GARCIA,
Petitioner-Appellant,**

v.

**STATE BOARD OF EDUCATION and
New Mexico State Department of
Education, Respondent-Appellee.**

No. 7383.

Court of Appeals of New Mexico.

Oct. 11, 1984.

Certiorari Denied Jan. 23, 1985.

Paul Bardacke, Atty. Gen., Carolyn Wolf, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

Ronald J. Van Amberg, Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, for petitioner-appellant.

## OPINION

NEAL, Judge.

Geronimo Garcia appeals the decision of the state board of education denying his application for renewal of his teaching certification. In August 1979, Garcia was found guilty by a jury of criminal sexual contact with a child under the age of 13, NMSA 1978, Section 30–9–13 (Repl.Pamp. 1984), a third degree felony. The imposition of a sentence was deferred and Garcia was placed on a three-year probation. On February 18, 1981, Garcia received an early discharge from probation and the criminal case was dismissed.

Garcia applied to the state board of education for re-certification as a teaching professional in New Mexico. His application was denied because he had been convicted of a crime relating directly to his employment. A hearing was held before Hearing Officer Anthony Tupler at which evidence

was heard regarding Garcia's fitness to teach.

Dr. Ned Siegel, a clinical psychologist, and, in 1979, director of the forensic hospital in Las Vegas, New Mexico, had evaluated Garcia to prepare a post-conviction report to the trial judge. He stated that Garcia was different from most men at the hospital in behavior and psychological testing; he helped with staff work and in organizing programs for other inmates. He regarded Garcia as helpful to his program. He stated that his offense may have been a reaction to stress and believed that in the future Garcia would turn to therapy when stressed, and therefore would be unlikely to pose a threat to children.

On cross-examination, the state questioned Dr. Siegel regarding the circumstances of Garcia's offense. Dr. Siegel stated Garcia and his wife were having marital difficulties at the time. He threatened to leave her. She, in turn, made accusations that he had sexual contact with her daughter. The daughter was from the wife's previous marriage. The touching which formed the basis of the conviction was "benign fatherly contact", Garcia believed, such as having the child sit on his lap. He only later realized his wife took a different view of the activity.

The hearing examiner asked Dr. Siegel if he would be comfortable with Garcia teaching one of his own children. Dr. Siegel replied that he would.

The major witness called by the state was Jim Pierce, director of teacher education and certification for the state department of education. He testified about conversations he had with a president of the parent-teacher association and other parents who stated that parents would object to Garcia's re-certification based on the fact of his conviction. Neither Mr. Pierce, nor any of the individuals he spoke to, had met Garcia or had any knowledge of the particular facts of his conviction or rehabilitation process. The state's other witness duplicated the testimony of Mr. Pierce.

In his report, the hearing officer adopted the findings of fact and conclusions of law

submitted by the department and made additional findings. On August 23, 1983, the state board of education issued its decision and order denying the application. The board adopted the findings and conclusions submitted by the department of education. Those findings did not deal specifically with the issue or rehabilitation. This court remanded to the board for findings on the issue of rehabilitation. The board found that "Garcia has not been sufficiently rehabilitated because parents would not perceive of him as a person with whom they would trust their children." Conclusion of Law No. 6 states, "A conviction for Criminal Sexual Contact with a Child Under Age 13 constitutes good and just cause for denial of an application for teaching certificate."

On appeal Garcia argues he was not "convicted" of a crime because he was given a deferred sentence, and therefore the "conviction" cannot be used as a basis for denying re-certification; that there was not substantial evidence that Garcia was not rehabilitated to support denial of the application; and that he is entitled to attorney fees because his constitutional rights have been violated.

The Criminal Offender Employment Act (COEA), NMSA 1978, Sections 28–2–1 to –6 (Repl.Pamp.1983), states in Section 28–2–4:

A. Any board or other agency having jurisdiction over employment by the state or any of its political subdivisions or the practice of any trade, business or profession may refuse to grant or renew, or may suspend or revoke, any public employment or license or other authority to engage in the public employment, trade, business or profession for any one or any combination of the following causes:

(1) where the applicant, employee or licensee has been convicted of a felony or a misdemeanor involving moral turpitude and the criminal conviction directly relates to the particular employment, trade, business or profession; or

(2) where the applicant, employee or licensee has been convicted of a felony or a misdemeanor involving moral turpitude

and the criminal conviction does not directly relate to the particular employment, trade, business or profession, if the board or other agency determines, after investigation, that the person so convicted has not been sufficiently rehabilitated to warrant the public trust. B. The board or other agency shall explicitly state in writing the reasons for a decision which prohibits the person from engaging in the employment, trade, business or profession, if the decision is based in whole or part on conviction of any crime described in Paragraph (1) of Subsection A of this section. Completion of probation or parole supervision, or of a period of three years after final discharge or release from any term of imprisonment without any subsequent conviction, shall create a presumption of sufficient rehabilitation for purposes of Paragraph (2) of Subsection A of this section.

The purpose of the COEA is set out in Section 28–2–2: "The legislature finds that the public is best protected when criminal offenders or ex-convicts are given the opportunity to secure lawful employment or to engage in lawful trade, occupation or profession and that barriers to such employment should be removed to make rehabilitation feasible." In *New Mexico Board of Pharmacy v. Reece,* 100 N.M. 339, 670 P.2d 950 (Ct.App.1983), this court noted the legislative intent to encourage the rehabilitation of criminal offenders by removing barriers to their employment.

■ The COEA applies to the State Board of Education. *Bertrand v. New Mexico State Board of Education,* 88 N.M. 611, 544 P.2d 1176 (Ct.App.1975), The act was interpreted by the supreme court in *Reece.* The court held that the COEA, and Section 28–2–4(A)(1) in particular, could not operate as an automatic bar to licensing of a rehabilitated criminal offender. Rather,

[W]e determine that the distinction under Section 28–2–4 between the treatment of crimes that directly relate to a profession and crimes that do not directly relate to a profession concerns the burden of proof.

Under Subsection 28–2–4(A)(1), an *applicant* for issuance or reinstatement of a Certificate has the burden of proving that he or she *has been* sufficiently rehabilitated. Under Section 28–2–4(a)(2), there is a presumption of rehabilitation and the *board* or *agency* has the burden of proving an applicant for issuance or reinstatement of a Certificate *has not been* sufficiently rehabilitated. (Emphasis in original.)

100 N.M. at 341, 670 P.2d at 952.

We first consider whether the finding of guilt by a jury and subsequent deferred sentence which then results in the dismissal of the criminal action following probation operates as a conviction under the COEA. We then discuss the issue of rehabilitation.

■ The COEA does not define "conviction" as that term is used in the act. Conviction in its technical legal sense means:

[T]he final consummation of the prosecution against the accused including the judgment or sentence rendered pursuant to a verdict, confession, or plea of guilty.... A judgment or sentence is indispensable to a conviction in this sense of the term, and the mere ascertainment of guilty by verdict or plea, *which satisfies the ordinary legal definition* of conviction, does not suffice. (Emphasis added.)

24 C.J.S. *Criminal Law,* § 1556, P. 385 (1961).

Garcia argues that the technical definition should apply to the COEA. While the issue has not been decided under the COEA, the line of cases under the Habitual Offenders Statute, NMSA 1978, Section 31–18–17 (Cum.Supp.1984), contains instructive reasoning. That section provides for increased penalties for criminal offenders based on prior convictions. The cases hold that a conviction for the purposes of the statute is the establishment of guilt by plea, jury verdict or finding of the court, and does not include the imposition of a sentence. *Padilla v. State,* 90 N.M. 664, 568 P.2d 190 (1977); *State v. Larranaga,*

77 N.M. 528, 424 P.2d 804 (1967); *Shankle v. Woodruff,* 64 N.M. 88, 324 P.2d 1017 (1958).

■ For the purposes of the COEA, it is the establishment of guilt which is the relevant concern, rather than the disposition of the matter upon such a finding. The California court considered the issue under the state's chiropratic licensing statute and stated:

> [T]he legislative purpose of including the "conviction" of certain crimes as grounds for discipline in section 10 of the Chiropractic Act and similar statutes is not merely to single out persons who have been the subject of certain procedural formalities but to reach those who have actually committed the underlying offenses. The conviction is significant in the statutory scheme only insofar as it is a reliable indicator of actual guilt.

*Cartwright v. Board of Chiropractic Examiners,* 16 Cal.3d 762, 129 Cal.Rptr. 462, 470, 548 P.2d 1134, 1142 (1976). The same reasoning applies with equal force in the case at bar. For purposes of the COEA, the jury determination of Garcia's guilt acts as a conviction despite subsequent dismissal of the case after Garcia completed his deferred sentence.

■ The decision of the state board that sexual misconduct with a minor relates directly to the teaching profession is supported by logic and by the case law of other jurisdictions. *See Board of Trustees v. Stubblefield,* 16 Cal.App.3d 820, 94 Cal. Rptr. 318 (1971); *Tomerlin v. Dade County School Board,* 318 So.2d 159 (Fla.App. 1975). Therefore, because he has been convicted of a crime directly relating to the teaching profession, the applicant for licensure has the burden of showing he has been sufficiently rehabilitated. *Reece.*

■ Under *Reece,* which was decided after the decision of the state board, the board must state the reasons why the applicant has not been rehabilitated and may not rely solely on the fact of conviction to deny the application. On remand, the board found Garcia had not been rehabilitated because parents would not perceive him as trustworthy.

In the hearing the state introduced as evidence the opinions of the current and past presidents of the state parent teacher association to the effect parents would not feel comfortable with Garcia as their children's teacher. Their opinions were not based on personal knowledge of Garcia's rehabilitation process, or his performance as a teacher.

The hearing officer apparently decided to admit such testimony as evidence that Garcia had not been rehabilitated because he believed the following language in the *Bertrand* decision required it: "Probative evidence of rehabilitation would include Ms. Bertrand's conscientious and successful performance at both jobs and the parents' perception of her as a person with whom they would trust their children." 88 N.M. at 614, 544 P.2d at 1179.

On appeal, the state board argues that the quoted language authorizes the use of generalized parental reaction to sex offenders as evidence that a particular offender has not been rehabilitated. We disagree.

The *Bertrand* case may be distinguished on the facts. In that case the teacher had been employed for one month before her past conviction for distribution of marijuana was brought to the attention of the local school board. Because she had performed as a teacher, the parents' testimony as to her successful performance was relevant evidence of rehabilitation. The Board also heard evidence that she was not sufficiently rehabilitated, including testimony by the superintendent regarding two incidents involving the teacher of which he had personal knowledge, where she made derogatory comments about the laws and law enforcement officials. State board members also spoke with the teacher and were able to draw their own conclusions about her rehabilitation. Therefore, the testimony, both for and against a finding of rehabilitation, was based on personal observation and knowledge of the individual.

■ It is true, as the board stated, that parental perception of the applicant in the *Bertrand* case as someone with whom they could trust their children was relevant to the issue of rehabilitation in that case. The parents had actual personal knowledge of the individual teacher and her performance, therefore their perception of her as one whom they could trust their children with had probative value regarding the issue of rehabilitation. In this case, however, the officials of the state parent-teacher association stated that the parents testified that they would not feel comfortable with Garcia as their children's teacher, with no personal knowledge of Garcia, his rehabilitation process, or even the circumstances of his criminal offense. Their perceptions, purely subjective in nature, can shed no light on whether Garcia is actually rehabilitated. The COEA and *Reece* plainly state that the issue is one of rehabilitation, and the fact of conviction cannot be used to deny certification. Whether parents believe that *any* person convicted of such an offense should be barred from teaching is not dispositive on the issue of whether the particular applicant has been rehabilitated. Therefore, while parents' perception of a teacher as someone they would trust relates directly to perceived rehabilitation when based on personal knowledge, mere opinion by parents as to their personal beliefs about sex offenders does not, and is therefore not relevant to a determination of rehabilitation under the COEA.

■ Garcia met his burden of showing he had been rehabilitated through the testimony of Dr. Siegel. As the state introduced no competent evidence that he had not, nor developed any such inference on cross-examination of the applicant's witnesses, there was not substantial evidence to support the board's decision. We therefore reverse.

■ Finally, Garcia argues for the first time on appeal that he is entitled to attorneys' fees under 42 U.S.C. § 1988 (1980) based on a conclusionary statement that his civil rights were violated under 42 U.S.C. § 1983 (1979). That section provides for a civil action for violation of civil rights. Section 1988 authorizes the court to award attorneys' fees to a prevailing plaintiff in such an action. His argument is clearly specious as he has not brought an action under § 1983, has not pled or proved that his civil rights were violated, nor, of course, has he prevailed on such a claim. He offers no authority for the proposition that attorneys' fees can be awarded when a § 1983 claim is raised for the first time on appeal. Further, § 1988 does not authorize an award of attorneys' fees to a prevailing party in state administrative proceedings, even when recourse to federal court on the merits of the civil rights claim is not necessary or available. *Blow v. Lascaris*, 523 F.Supp. 913 (N.D.N.Y.1981). Garcia's claim for attorneys' fees, raised for the first time on appeal, is unfounded and is therefore denied.

ALARID, J., concurs.

HENDLEY, J., specially concurring.

HENDLEY, Judge (Specially Concurring).

I agree with the result reached by the majority. My special concurrence is directed at *Bertrand v. New Mexico State Board of Education*, 88 N.M. 611, 544 P.2d 1176 (Ct.App.1975). *Bertrand* made a gratuitous statement not necessary to the holding when speaking to rehabilitation. It stated, "and the parents' perception of her as a person with whom they would trust their children." This language was of obvious concern to the hearing examiner, Mr. Tupler, because in his letter to counsel, he stated:

Under *Bertrand v. New Mexico State Board of Education*, 88 N.M. 611, 544 P.2d 1176 (1976) [sic], probative evidence of rehabilitation includes " * * * the parents' perception of [the teacher's] her as a person with whom they would trust their children." Id at 614. I find this statement perplexing. How the percep-

tion of others relates to one's "rehabilitation" seemingly is a curious proposition at best. The evidence fairly supports the conclusion that if Mr. Garcia even needed rehabilitation to begin with, his conduct at the Forsenic [sic] Unit made it virtually a foregone conclusion. By this comment, I do not suggest that I look with askance at the jury's decision finding him guilty beyond a reasonable doubt. The fact of Mr. Garcia's conviction is not an issue in this case, irrespective of the final disposition of dismissal by the convicting court. Nevertheless, since rehabilitation includes the parental perceptions of teachers, I find that Mr. Garcia has not been sufficiently rehabilitated to warrant the issuance of a certificate. How he can gain the trust of parents in the future sufficient to justify a certificate must go unanswered. I would add that from the evidence it is apparent that he has done all that he can do to rehabilitate himself.

In my view, the very definition of rehabilitation and the purposes set forth in the Criminal Offender Employment Act, NMSA 1978, Section 28–2–2 (Repl.Pamp. 1983), do not speak to "[h]ow the perception of others relates to one's 'rehabilitation.'" It was this language in *Bertrand* which has led others astray. It is obvious from the record that this was the focus of the state before the hearing officer. It was relying on witnesses who dealt with the "perception of others." It is further obvious from the findings of fact and conclusions of law filed by the Board, that they, too, dealt with the perception of others.

It was the language in *Bertrand* which caused the problem of misleading the parties. In *Bertrand* there was sufficient evidence of lack of rehabilitation without adding the "perception of others."

If I read the majority correctly, they are overruling that part of *Bertrand* dealing with the "perception of others." In this, I agree.